# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1750 | **DATE** | 9/27/2004 |
| **CASE TITLE** | SHERMAN RILEY vs. NATIONAL RAILROAD PASSENGER CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendant's motion for summary judgment [12-1] is granted. Judgment is entered for defendant National Railroad Passenger Corp., d/b/a Amtrak, and against plaintiff Sherman Riley. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | SEP 28 2004 | 20 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 9/27/2004 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| CB | courtroom deputy's initials | 2004 SEP 27 PM 5:41 U.S. DISTRICT COURT | |
| | | Date/time received in central Clerk's Office | PW mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHERMAN RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04 C 1750 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| NATIONAL RAILROAD PASSENGER CORP., | ) | |
| d/b/a AMTRAK, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED SEP 2 8 2004

### MEMORANDUM OPINION AND ORDER

Sherman Riley sues National Railroad Passenger Corp., d/b/a Amtrak ("Amtrak") pursuant to 42 U.S.C. § 1981. Riley asserts Amtrak terminated him in 2002 on account of his race. Amtrak contends its 2002 termination of Riley for sleeping while on duty was non-discriminatory and moves for summary judgment under Fed. R. Civ. P. 56.

### BACKGROUND

All facts are undisputed unless otherwise noted.[1] On February 4, 1980, Riley began working for Amtrak as a carman. Amtrak Facts at ¶ 4. Carmen are responsible for inspection, maintenance and repair of Amtrak's trains. *Id.* at ¶ 13. For at least the past ten years, Riley has worked at Amtrak's Chicago facility. *Id.* at ¶ 14. Riley is African-American and is currently employed by Amtrak. *Id.* at ¶ 3.

---

[1] Amtrak filed a reply to Riley's response to Amtrak's statement of undisputed material facts. This response is not authorized by Local Rule 56.1 and is disregarded.

1

On July 17, 2002, Amtrak's management performed an inspection of the Chicago facility and identified inefficiencies. *Id.* at ¶ 21. As a result of the inspection, the following employees were charged with sleeping on the job: Jerome Baker (black), Carl Cook (black), Peter Demetrius (black), Charles Hayes (black), Josea Middleton (black), Pedro Avalos (Hispanic), John Fassl (white), David Nadolny (white) and Joseph Rybak (white). *Id.* at ¶ 22. Investigative hearings were conducted; each employee had union representation and was given an opportunity to defend himself against the charges. *Id.* at ¶¶ 24, 30, 35, 41, 46, 50, 56, 64, 72. All nine employees were terminated. *Id.* at ¶¶ 26, 32, 37, 43, 48, 52, 58, 66, 74. Five were reinstated after appeals by their unions. *Id.* at ¶ 28, 39, 44, 54, 78. Two other employees, Carmen Cabello (Hispanic) and Peter Dutrow (white) were charged with falling asleep at their workstations. *Id.* at ¶ 79. At their union's request, Cabello and Dutrow were given waivers. *Id.* at 80-82. A waiver is an agreement between Amtrak and an employee whereby the employee admits guilt and waives his right to a formal investigative hearing in exchange for lesser discipline. *Id.* at ¶ 9. After the July 17, 2002 inspection, Amtrak "put the word out" that it was "cracking down" on sleeping. *Id.* at ¶ 83.

On August 16, 2002, Riley's shift began at 11:00 p.m. and ended at 7:00 a.m. the next morning. *Id.* at ¶ 84. William Spisak was the foreman on duty, assisted by foreman Norville Simpson. *Id.* Riley was teamed to work with Marlon Cooper and Marcus Ethridge. *Id.* at ¶ 85. On the morning of August 17, 2002, while still on duty, Riley went to the second floor bedroom of a sleeper car while Ethridge and Cooper performed repair work that had been assigned to all three employees. *Id.* at ¶ 86. At approximately 6:25 a.m., Spisak found Riley in the sleeper car and reported to Tom Chase, his supervisor, that he had found Riley sleeping. *Id.* at ¶¶ 87-88. Chase pulled Riley out of service (*i.e.,* suspended him pending investigation) for sleeping on the job. *Id.*

2

at ¶ 89. Prior to August 17, 2002, Riley had been disciplined on twenty occasions including a 1989 dismissal and reinstatement. *Id.* at ¶ 90.

By letter dated August 20, 2002, Amtrak notified Riley he was charged with failing to remain alert and with sleeping in a passenger car, in violation of the "Attending to Duties" standard of Amtrak's "Standards of Excellence" and a July 12, 2002 letter of instruction from Chase. *Id.* at ¶ 92. Riley was informed he could produce witnesses and have union representation at his scheduled investigative hearing. *Id.* at ¶¶ 92-93. Riley's hearing took place on September 6, 2002, was continued to allow the union to call an additional witness, and concluded on September 16, 2002. *Id.* at ¶ 94. Carl Demotses served as hearing officer, Chase served as Amtrak's charging officer, and the union's local chairman William Smith appeared on Riley's behalf. *Id.* at ¶¶ 95-97. Riley attended the hearing, testified on his own behalf, and questioned witnesses. *Id.* at ¶ 98. Riley testified: (1) on the morning of August 17, 2002, he, Ethridge and Cooper were assigned to inspect a train; (2) Ethridge and Cooper volunteered to inspect the train and let Riley "sit and wait;" (3) at 6:25 am., he was sitting upright in a bedroom of the sleeper car and saw Spisak enter the room; and (4) he told Spisak he was waiting to get off work. *Id.* at ¶ 106. During the hearing, Smith and Riley did not assert Spisak discriminated against Riley on the basis of his race. Riley Facts at ¶ 162.

Spisak and Simpson also testified at Riley's hearing. Amtrak Facts at ¶¶ 99, 101. Spisak testified: (1) at approximately 5:15 a.m. on August 17, 2002, he looked for Riley to assign him a task; (2) he found Riley at 6:20 a.m. reclining with his eyes closed and his head on two pillows on the couch of a sleeper car; (3) the room door curtain was closed, both window curtains were closed, the room light was off; (4) he awakened Riley in a raised voice; (5) Riley stated he was waiting to go home; and (6) he assigned Riley the task. *Id.* at ¶ 100. Simpson testified: (1) at approximately

3

6:00 a.m. on August 17, 2002 he assigned Riley, Ethridge, and Cooper to inspect a train; and (2) he did not tell Riley to take a break anytime around 6:00 a.m. *Id.* at ¶ 102.

On September 18, 2002, Demotses issued his written decision. *Id.* at ¶ 107. Demotses found Amtrak had proven the charges against Riley and that Riley's testimony was less credible than that of all other witnesses. *Id.* at ¶¶ 107-108. In addition, Demotses found that, in violation of both Amtrak's standards and the July 11, 2002 letter of instruction, Riley elected not to follow instructions to inspect the train and went to the sleeper car where he was found by Spisak asleep or assuming an attitude of sleep. *Id.* at ¶ 109-110. In light of the foregoing, Steve McClarty, superintendent of terminal services, issued a termination recommendation. *Id.* at ¶ 111. McClarty's supervisor approved the termination recommendation; Riley was notified of the termination decision on September 20, 2002. *Id.* at ¶¶ 113, 115.

The union's two appeals of the discharge decision and request for issuance of a leniency reinstatement were denied. *Id.* at ¶¶ 116-120. The union subsequently appealed Riley's termination to the Public Law Board ("PLB"), a three-member arbitration panel empowered to hear appeals from Amtrak's disciplinary decisions. *Id.* at ¶¶ 11, 121. The PLB consisted of a neutral chairperson, an Amtrak representative and a union representative. *Id.* at ¶ 11. The PLB sustained the disciplinary decision's finding that Riley was asleep while on duty and that Riley's explanation for his presence in the sleeper car was unreasonable. *Id.* at ¶¶ 122-124. After finding Riley's twenty-two year tenure with Amtrak was virtually without discipline for the previous thirteen years, the PLB reduced Riley's discipline from termination to suspension without pay, and he was placed on final warning status. *Id.* at ¶ 125; Riley Facts at ¶ 167.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

### II. Race Discrimination

Section 1981 prohibits employment discrimination based on race. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 346 (7th Cir. 1999), *citing Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998). "While Section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical." *Von Zukerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993). To prevail on his claim, Riley must demonstrate "that the basis for [his] termination was the impermissible consideration of race, i.e. that a person of another race would not have been discharged under similar circumstances." *Cowan v. Glenbrook Sec. Servs.*, 123 F.3d 438, 442 (7th Cir. 1997), *quoting Rush v. McDonald's Corp.*, 966 F.2d 1104, 1112 (7th Cir. 1992). To do so, Riley must offer either direct or indirect evidence of discrimination. *See Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998).

Riley does not offer any direct evidence that Amtrak terminated his employment because of his race. Instead, he relies on the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

In order to establish a *prima facie* case of race discrimination using the indirect method, Riley must show: (1) he belongs to a protected class; (2) he met Amtrak's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) Amtrak treated similarly situated employees outside the protected class more favorably. *Johnson v. Cambridge Indust., Inc.*, 325 F.3d 982 (7th Cir. 2003). If Riley establishes a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to Amtrak to articulate a non-discriminatory reason for its adverse action. *Dyrek v. Garvey*, 334 F.3d 590, 598 (7th Cir. 2003). If Amtrak meets this burden, the presumption of discrimination disappears and Riley must prove, by a preponderance of the evidence, Amtrak's asserted reason is a pretext for intentional discrimination. *Id.*

Amtrak does not contest Riley's ability to satisfy the first and third prongs of a *prima facie* case. Rather, Amtrak contends Riley was not meeting its legitimate performance expectations at the time of termination and that he has not identified similarly situated employees outside the protected class who were treated more favorably. Finally, Amtrak asserts Riley cannot establish its legitimate non-discriminatory reason for his termination was pretextual.

### A. Job Expectations

To establish the second element of a *prima facie* case, Riley must demonstrate "he was performing his job satisfactorily enough to avoid discharge absent racial bias." *Cowan*, 123 F.3d at 445. Amtrak argues Riley cannot establish he met legitimate performance expectations by sleeping on the job while his co-workers inspected the train. Riley does not argue that sleeping while on duty

6

would have satisfied Amtrak's expectations. Rather, he contends: (1) the assigned train inspection did not require three employees, and Ethridge and Cooper assured him his help was unnecessary; (2) carmen are allowed to sit on the train to await their next assignments or the end of their shifts; and (3) he was not sleeping during his shift. Riley Mem. at 4-6. He asserts he met Amtrak's expectations by waiting in the train car until his next assignment or completion of his shift. *Id.*

Viewing all facts and inferences in his favor, the undisputed evidence demonstrates Riley did not meet Amtrak's legitimate performance expectations. Riley does not deny he was found in the second level bedroom of a darkened sleeper car. He does not deny that he did not perform the inspection as assigned. Regardless of whether he was in fact asleep or whether his co-workers did not feel they needed help, he was not performing the task assigned to him by his supervising foreman. An employee who does not follow his supervisor's direct orders cannot establish he met the employer's legitimate performance expectations. *Onwunmelu v. Amtrak*, 318 F. Supp. 2d 669, 671 (N.D. Ill. 2004).

Nevertheless, Riley contends the court need not address whether he satisfied Amtrak's expectations because Amtrak acted with a racially discriminatory bias in terminating him based on the August 17, 2002 incident. When the issue is whether "plaintiff was singled out for discipline based on a prohibited factor, it makes little sense . . . to discuss whether [he] was meeting [his] employer's reasonable expectations." *Curry v. Menard, Inc.*, 270 F.3d 473, 477 (7th Cir. 2001). However, this approach requires Riley to first establish he was singled out, *i.e.*, treated differently than similarly situated employees outside his protected class. *Id., Oest v. Ill. Dep't of Corr.*, 240 F.3d 605 (7th Cir. 2001); *Flores v. Preferred Tech. Group*, 182 F.3d 512 (7th Cir. 1999); *Tate v. Washington Mutual*, No. 02 C 5853, 2004 U.S. Dist. LEXIS 15516, at *22-25 (N.D. Ill. Aug. 10,

7

2004); *Walls v. Turano Baking Co.*, 221 F. Supp. 2d 924, 932 (N.D. Ill. 2002). Because Riley is unable to show differential treatment, the court must reject this argument.

**B.     Similarly Situated**

Normally, to establish two employees are similarly situated, the evidence must show both employees "dealt with the same supervisor, were subject to the same workplace rules, and engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). Riley, citing *Lopez v. Chicago Faucet Co.*, No. 02 C 6930, 2003 U.S. Dist. LEXIS 18738, at *17-18 (N.D. Ill. Oct. 20, 2003), asserts this normal showing is unnecessary if a collective bargaining agreement dictates that identical standards apply to two employees. Riley Mem. at 6-7. Relying on *Lopez*, he contends Dutrow and Cabello were similarly situated to him because, as members of Riley's union, they were governed by the same collective bargaining agreement. Riley argues Dutrow and Cabello were treated more favorably because they received waivers after falling asleep while on duty, two witnesses established they had fallen asleep, and they were given blood and urine tests to check for drugs. In contrast, he was terminated, Spisak was the only witness to Riley's alleged sleeping and he was not given a drug test.

Dutrow and Cabello are not similarly situated based simply on a shared collective bargaining agreement. In *Lopez*, the plaintiff challenged a job reassignment as violating provisions of a collective bargaining agreement; the court viewed employees with equal or greater seniority rights as similarly situated for purposes of that analysis. Here, the provisions or requirements of the collective bargaining agreement are not at issue. Rather, Riley contends his discipline was discriminatory because Spisak's August 17, 2002 accusation against him was grounded in racial bias.

Therefore, the appropriate standard requires Riley to identify another employee who committed a similar infraction but was treated more favorably by Spisak. *Radue*, 219 F.3d at 617-18.

Riley fails to establish Dutrow and Cabello are similarly situated. Preliminarily, Riley does not allege that Spisak found Dutrow or Cabello asleep, that he was their supervisor, or that he had anything to do with their discipline. Nor does he establish they were treated differently by the same decisionmaker; Dutrow and Cabellow were not disciplined by McClarty. Amtrak Facts at ¶¶ 80-82. This failure alone precludes a showing of similarity. *Radue*, 219 F.3d at 618. Further, Riley undermines his own arguments regarding different procedures and discipline by contending their conduct differed from his in severity.[2] Riley Mem. at 8. Finally, regardless of whether their conduct was more or less egregious than Riley's, it is undisputed that Dutrow and Cabello admitted guilt to obtain waivers. In contrast, "throughout the discipline process and this litigation, [Riley] has consistently maintained that he was not sleeping during his shift on the morning of August 17, 2002." Riley Mem. at 5. The employees' contrasting approaches to admitting guilt reasonably distinguished their conduct and Amtrak's treatment of them. *Radue*, 219 F.3d at 617-18.

Moreover, the evidence shows that nine employees were terminated for sleeping on the job in July 2002. Of the nine, four were terminated by McClarty, the same individual who made Riley's termination decision. Of those four, two were African-American and two were Caucasian. Riley

---

[2] Additionally, Riley does not make clear how Dutrow and Cabello were treated more favorably by being forced to undergo a drug test. Even if two witnesses to sleeping infractions were recommended or required, Amtrak Resp. Riley Facts at ¶ 156, the evidence establishes other employees were terminated for sleeping on duty based on the allegations of only one witness. Amtrak App. Ex. G at Exs. 27, 32, 37. The record is therefore insufficient to establish similarly situated employees were treated more favorably.

9

has failed to satisfy his *prima facie* burden of identifying a similarly situated employee who was treated more favorably.

## C. Pretext

Even if Riley established a *prima facie* case of race discrimination, no reasonable jury could find Amtrak's reason for his termination was pretextual. By asserting Riley was terminated for sleeping or assuming an attitude of sleep instead of following instructions, Amtrak has met its burden of asserting a legitimate non-discriminatory reason for its adverse action. To establish pretext, Riley must point to evidence that would tend to prove Amtrak's reason is factually baseless, not the actual motivation for the discharge, or insufficient to motivate the discharge. *Dyrek*, 334 F.3d at 598. It is not enough to show the decision was mistaken or unfair, for the court's only concern regarding pretext is whether Amtrak's explanation was honestly believed. *Id.*; *Giannopoulous v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir. 1997).

Riley asserts he can show pretext because similarly situated employees were treated more favorably and Amtrak utilized different procedures in disciplining those employees. As previously discussed, those arguments are rejected. Riley further argues Amtrak's reliance on the allegation he was sleeping on the job is pretextual because Spisak was motivated by discriminatory intent. In support of this allegation, he points out Spisak shouted at him to complete an unsafe task three days prior to the charge of sleeping while on duty. Riley found Spisak's demeanor troubling because "Spisak did not display such anger with Caucasian employees who caused problems." Riley Mem. at 12. Riley asserts his view Spisak had racial bias is corroborated by Ethridge and Cooper, who think Spisak places higher demands on African-American employees than on Caucasian employees.

Finally, Riley contends Spisak falsely testified at the termination hearing that he found Riley asleep, approached Ethridge to locate Riley, and that Simpson knew Spisak was searching for Riley.

Viewing the facts in Riley's favor, these allegations do not support a reasonable inference of discrimination in the termination decision. It is undisputed that Spisak did not make the decision to terminate Riley. Riley tries to skirt this fact by asserting his disciplinary proceeding was tainted by Spisak's discriminatory animus, which was imputed to Amtrak. In support of this allegation, Riley argues the hearing officer substantially relied on Spisak's testimony and "never examined the possibility of Spisak's racial motivation." Riley Mem. at 14. The court finds this argument curious at best. It is undisputed Riley presented and questioned witnesses and had union representation at the hearing, yet he never asserted Spisak discriminated against him on the basis of race. Instead, Riley asserted Spisak was setting him up because Riley testified in an employee's personal injury lawsuit against Amtrak and because Riley objected to an assignment Spisak had given him. Spisak Dep. at 161-62, 176-77. If anything, these arguments support Amtrak's assertion that the adverse action was taken for reasons other than race. They certainly do not support Riley's argument that Spisak's alleged discriminatory animus should be imputed to the hearing officer, McClarty or Amtrak, or that Amtrak did not honestly believe it was terminating Riley for sleeping on the job.

Riley had an opportunity to dispute the alleged discriminatory charges through an investigatory process; his story was not credited. The hearing officer determined Amtrak had proven the charges against him. Even the PLB, which reduced Riley's discipline from termination to suspension, sustained the disciplinary decision's finding that Riley was asleep while on duty and that Riley's explanation for his presence in the sleeper car was unreasonable. No reasonable jury could conclude Amtrak terminated Riley on the basis of his race.

## CONCLUSION

The material facts are undisputed. For the foregoing reasons, Amtrak is entitled to judgment as a matter of law.

September 27, 2004

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge